NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| **JUDITH SEMPLE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No. 13-5198 (ES)** |
| | : | |
| **PATRICK R. DONAHOE,** | : | **OPINION** |
| **Postmaster General,** | : | |
| **United States Postal Service,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**SALAS, DISTRICT JUDGE**

**I.     INTRODUCTION**

Pending before this Court is defendant Patrick R. Donahoe, Postmaster General of the United States Postal Service's (the "USPS" or "Defendant") motion to dismiss or, in the alternative, for summary judgment.  (D.E. No. 11).  The Court resolves Defendant's motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Defendant's motion to dismiss is GRANTED.  Plaintiff Judith Semple's ("Semple" or "Plaintiff") complaint is hereby dismissed *without* prejudice.

**II.     FACTUAL BACKGROUND[1]**

In October 2006, Semple began working with the postal service "as a rural carrier assigned to the Monroe, New Jersey office."  (D.E. No. 1 ("Compl.") ¶ 8).  In 2009, Semple became a "part-

---

[1] Given the standard of review discussed below, the Court provides the factual and procedural background of this action in view of Semple's Complaint, as well as several administrative documents provided for the Court's consideration.  The Court considers these documents without converting the USPS's motion to one for summary judgment.  *See infra* Part IV.  To be sure, the Court must accept Semple's factual allegations as true for purposes of resolving the USPS's motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

time flexibility city carrier and was transferred to the Perth Amboy, New Jersey Post Office." (*Id.* ¶ 9).

After this transfer, Semple "experienced a number of medical issues which were disabling for varying periods of time." (*Id.* ¶ 10). Semple's "[m]anagement respond [sic] to these issues with a pattern of hostility." (*Id.* ¶ 11). "Because of her weight and build the [P]laintiff had to deal with significantly compromised feet that impaired her ability to walk unless she took certain medical measures and wore extra wide shoes that were larger than any postal service approved shoes." (*Id.* ¶ 12).

"[O]n at least six occasions" between "December 2011 and the date April 6, 2012," Semple's management "attacked" her "regarding the disabling condition of her feet." (*Id.* ¶ 13). Semple was ultimately "coerced into agreeing to a Last Chance Agreement dated February 29, 2012." (*Id.* ¶ 15). This "Last Chance Agreement," *inter alia*, required the "proper delivery of the mail unless unsafe conditions existed." (*See id.* ¶¶ 16-18).

On March 23, 2012, Semple returned to "the office with undelivered mail" involving "locations that the plaintiff in good faith had believed to be unsafe and which she had previously reported as being such." (*Id.* ¶¶ 20, 22). When she returned to the office with the undelivered mail, "no supervisors could be found to [be] advised of this mail." (*Id.* ¶ 20).

Semple was then served with a "notice of removal dated April 6, 2012." (*Id.* ¶ 23). The basis for this notice was the "undelivered mail and a purported failure to purportedly notify management of [the] same." (*Id.*). Semple then confronted "the deciding official with an accusation of 'are you doing this to me because I am fat or a female or both?'"—but the "deciding official did not deny this accusation." (*Id.* ¶¶ 25-26). Semple attributes her "discharge" to her "gender and disability." (*Id.* ¶¶ 27-28).

### III.    ADMINISTRATIVE PROCEEDINGS AND THE INSTANT ACTION

On April 5, 2012, Semple signed an "Information for Pre-Complaint Counseling" form that the Equal Employment Opportunity ("EEO" and "EEOC" if referring to the Equal Employment Opportunity Commission) office received on April 9, 2012.  (D.E. No. 11-6, Ex. 3 to Perron Decl.). On May 7, 2012, Semple signed a second "Information for Pre-Complaint Counseling" form that the EEOC received on May 14, 2012.  (D.E. No. 11-8, Ex. 5 to Perron Decl.).

Subsequently, Semple filed an EEO complaint dated July 2, 2012.  (D.E. No. 11-9, Ex. 6 to Perron Decl.).  In the EEO complaint, Semple checked a box indicating that she was alleging "disability" discrimination.  (*Id.* at 2).  She indicated that the period of discrimination was from December 2011 to April 6, 2012.  (*Id.*).

As an explanation, she wrote the following: "medical discrimination not accommodated . . . can not wear post office designated foot wear as it is <u>not</u> made in my size requirement . . . baby brain . . . forgetfulness, due to pregnancy."  (*Id.*).  She also included an addendum spanning several pages that detailed her purported discriminatory experience.  (*See id.* at 5-19).

In a notice dated July 23, 2012, an EEO Services Analyst sent Semple an "Acceptance for Investigation."  (D.E. No. 11-10, Ex. 7 to Perron Decl.).  This notice advised Semple that the "scope of the investigation" will only include the following issue: "alleged discrimination based on Disability (Unspecified) when [Semple was] issued a Notice of Removal for Failure to Comply with the Terms of a Last Chance Agreement dated April 6, 2012."  (*Id.* at 2).  This notice also indicated that, if Semple "did not agree with the defined <u>accepted</u> issue(s), [she] must provide a written response specifying the nature of [her] disagreement within seven (7) calendar days of receipt of this letter to the EEO Services Analyst."  (*Id.*).

The EEO Investigator prepared a report dated October 13, 2012.  (D.E. No. 11-11, Ex. 8 to Perron Decl.).   In this report, the EEO Investigator summarized that Semple "has alleged discrimination based on disability (spine degeneration; mild bulging discs; pinched nerve; and severe bunion) when she was issued a Notice of Removal for Failure to Comply with the Terms of a Last Chance Agreement dated April 6, 2012."  (*Id.* at 2).

In an order dated February 6, 2013, however, EEOC Administrative Judge Stilp granted Semple's request to add a gender discrimination claim.  (D.E. No. 11-12, Ex. 9 to Perron Decl.). Ultimately, however, Administrative Judge Stilp ruled that Semple suffered no discrimination in a "bench decision" dated May 8, 2013.[2]  (D.E. No. 11-13, Ex. 10 to Perron Decl.).  And in a notice dated June 6, 2013, an EEO Services Analyst sent a "notice of final action" wherein the Analyst "agree[d] with the Administrative Judge that [Semple has] not shown that [she was] the victim of illegal discrimination" and that the Analyst has "decided to implement" Administrative Judge Stilp's decision.  (D.E. No. 11-14, Ex. 11 to Perron Decl.).

On August 29, 2013, Semple filed the instant action.  Semple asserts the following two Counts: (1) "unlawful discrimination on account of a disability in violation of 29 U.S.C. § 794," (Compl. ¶ 29); and (2) "unlawful discrimination on account of gender in violation of 42 U.S.C. § 2000e-2."  (*Id.* ¶ 32).  Thereafter, the USPS filed the instant motion.  (D.E. No. 11).

## IV.   LEGAL STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[2] Although the parties briefing references a May 18, 2013 bench decision, the exhibit of the decision indicates the actual date was May 8, 2013.

the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) ("The Magistrate Judge and District Court properly relied on Ruddy's EEOC file, which Ruddy referenced in his complaint and which is integral to his claim . . . ."); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").[3]

---

[3] *See also Gillyard v. Geithner*, No. 12-125, 2012 WL 2036504, at *3 n.3 (E.D. Pa. June 5, 2012) ("In this case, Defendant puts forth several administrative documents for the Court to consider. Plaintiff does not dispute the authenticity of such documents and Plaintiff bases his claims, in part, on such documents because he avers that he timely exhausted his administrative remedies. Therefore, the Court will consider these documents in deciding Defendant's Motion to Dismiss.") (internal citations omitted); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) ("[W]e may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one summary judgment.").

## V.   DISCUSSION

For the reasons below, the Court grants the USPS's motion to dismiss *without* prejudice. Accordingly, the Court declines the USPS's alternative request to treat its motion as one for summary judgment.  *See* 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice and Procedure § 1366 (3d. ed. 1998) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").  After all, the parties' arguments principally concern Rule 12(b)(6) issues.

Accordingly, consistent with the Rule 12(b)(6) standard detailed above, the Court has considered only certain submissions and arguments—and not those submissions or arguments involving a Rule 56 analysis, such as Local Rule 56.1 statements of undisputed facts and responses thereto.  In sum, the Court resolves the USPS's motion under Rule 12(b)(6).  *See Abiuso v. Donahoe*, No. 12-1713, 2014 WL 1330641, *1-2, *3 n.1 (E.D.N.Y. Mar. 31, 2014) (adopting magistrate judge's report and recommendation to grant a Rule 12(b)(6) motion to dismiss where magistrate judge explained that, "[s]ince the Court is recommending that [d]efendant's motion to dismiss be granted, it need not consider [d]efendant's alternative request for summary judgment.").

### A.  Semple's Rehabilitation Act Claim Must Be Dismissed

The USPS asserts that Semple's "pleadings completely omit the elements of disability discrimination in favor of broad-brush, conclusory allegations."  (D.E. No. 11-1, Defendant's Memorandum of Law in Support of Motion to Dismiss or in the Alternative for Partial Summary Judgment ("Def. Mov. Br.") at 11).[4]  The USPS contends that, under the Rehabilitation Act, a

---

[4] The USPS admits to improperly labeling its motion as one for, in the alternative, a *partial* summary judgment.  (*See* D.E. No. 18, Defendant's Reply Memorandum of Law in Support of Motion to Dismiss Claims or in the Alternative

federal employee can bring two kinds of actions: (1) disparate treatment because of a disability and (2) failure to reasonably accommodate a disability. (*Id.* at 13). It argues, however, that the latter kind of action is not at issue because nothing in the complaint describes that Semple "requested accommodation of a disability or that her superiors denied her request." (*Id.* at 14).

And, as for disparate treatment, the USPS avers that Semple has failed to plead the requisite elements for the following two reasons: (1) Semple fails to identify her disability; and (2) Semple fails to claim that any impairment substantially limited a major life activity, that she has a record of such a substantially limiting impairment, *or* that she was regarded to having such a substantially limiting impairment. (*Id.* at 12-14). Moreover, the USPS asserts that, without "factual allegations that describe the elements of disability discrimination and suggest pretext, it is entirely implausible that Semple would be entitled to relief under the Rehabilitation Act." (*See id.* at 15-16).

In opposition, Semple argues that, "[e]ven if the Plaintiff's complaint should have contained more factual information," the USPS's Rule 12(b)(6) motion fails because "it does not take into account the extensive information provided by the Plaintiff in the administrative proceedings which information became part of records that are integral to the claims in this litigation." (D.E. No. 13, Plaintiff's Brief in Opposition to Motion to Dismiss Claims or in the Alternative for Partial Summary Judgment ("Pl. Opp. Br.") at 7). And, to that extent, Semple contends that the "record demonstrates that Plaintiff in fact identified specific and significant physical impairments" and her condition was "in fact disabling." (*Id.* at 8-9).

Furthermore, Semple avers that a factfinder could find that there is evidence of a pretext for termination. (*See id.* at 10-12). Namely, Semple posits that pretext exists because Semple

---

for Summary Judgment ("Def. Reply Br.") at 1 n.1 ("The cover page of [D]efendant's moving memorandum of law was incorrectly titled as supporting the Motion to Dismiss Claims or the Alternative for 'Partial' Summary Judgment. The Postal Service seeks complete dismissal of the Complaint or in the alternative full, not partial, summary judgment.")).

"had at the very least a good faith reason to conclude that [the premises] were not safe" in connection with undelivered mail.  (*Id.* at 10).  Semple also contends that her supervisor's response to—or lack thereof—Semple's discriminatory treatment accusation supports pretext.  (*Id.* at 11-12).

        The Rehabilitation Act provides that

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a); *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996) ("The Rehabilitation Act of 1973, 29 U.S.C. § 701 et. seq., is applicable only to federal employers and employers who receive federal funding. . . . The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement.").

        "To make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job."  *Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000) (quoting *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).

        Notably, the Rehabilitation Act also provides that the "standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990."  29 U.S.C. § 794(d); *see also Donahue*, 224 F.3d at 229 ("The elements of a claim under § 504(a) of

the Rehabilitation Act are very similar to the elements of a claim under Title I of the Americans with Disabilities Act . . . .").

Under the Americans with Disabilities Act, a "disability" is "A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1); *see also Riley v. Potter*, No. 08-5167, 2011 WL 3841530, at *5 (D.N.J. Aug. 25, 2011) (citing 42 U.S.C. § 12102(1) to define "disability" in connection with the Rehabilitation Act).

Semple's Rehabilitation Act claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6).  Semple alleges only that she "experienced a number of medical issues which were disabling for varying periods of time," presumably in connection with the "disabling condition of her feet."  (Compl. ¶¶ 10, 13).  She alleges that "[b]ecause of her weight and build [she] had to deal with significantly compromised feet that impaired her ability to walk unless she took certain medical measures and wore extra wide shoes that were larger than any postal service approved shoes."  (*Id.* ¶ 12).  But, given the elements outlined above for a Rehabilitation Act claim, the Court finds that there is insufficient factual matter in Semple's complaint.

Indeed, Semple appears to concede as much.  Semple argues that the USPS's Rule 12(b)(6) challenge to her pleadings fails "because it does not take into account the extensive information provided by the Plaintiff in the administrative proceedings."  (Pl. Opp. Br. at 7).  She contends that, when her "EEO file" is considered, "the basis for . . . assert[ing] in the Plaintiff's complaint that she suffered from a number of medical issues which were disabling for extended periods of time becomes extremely clear."  (*Id.* at 8).  Thus, Semple seems to invite the Court to assess the USPS's Rule 12(b)(6) challenge against the administrative record, not her complaint.

As noted above, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.  For instance, the Court may consider administrative records from EEO proceedings in resolving a Rule 12(b)(6) motion to determine whether a plaintiff has exhausted administrative remedies.  *See Ruddy*, 455 F. App'x at 283; *Gillyard*, 2012 WL 2036504, at *3 n.3.

But Semple cites no authority—nor is the Court aware of any—suggesting that the Court's ability to consider these materials *relieves* Semple's obligation under Federal Rule of Civil Procedure 8(a)—*i.e.*, to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."   Indeed, Semple's complaint needs sufficient factual matter, "accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *cf. Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *2, *7-8 (D.N.J. Sept. 4, 2012) (dismissing breach of contract claim—even though contract was attached as an exhibit—because the plaintiff did not allege "which particular Defendant (or Defendants) breached the parties' Agreement or even which particular provision of the parties' Agreement was breached" and ruling that "it is clear that Plaintiff's breach of contract claim fails to meet the pleading requirements of Rule 8(a)(2)").   Thus, Semple's complaint must have the requisite factual allegations to support her Rehabilitation Act claim.  *See Iqbal*, 556 U.S. at 678-79.  As is, it does not.

### B.  Semple's Gender Discrimination Claim Must Be Dismissed

The USPS concedes that Semple is a member of a protected class and, for purposes of its motion, that "she was qualified for her position as a letter carrier."  (Def. Mov. Br. at 16).  But the USPS argues that "[n]owhere does the [c]omplaint allege that similarly situated male carriers (or

for that matter non-disabled carriers) were treated better than Semple." (*Id.* at 17).  The USPS asserts that Semple merely alleges a legal conclusion that she was "deprived of . . . rights, privileges and immunities secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 on account of gender." (*Id.* (quoting Compl. ¶ 4)).

And the USPS argues that Semple fails to show gender discrimination "because none of the male letter carriers was [sic] under a last chance agreement." (Def. Reply Br. at 7).  It adds that, even if Semple asserts a *prima facie* gender discrimination case, "violation of her Last Chance Agreement was a legitimate business reason for terminating her employment" and that "she has failed to allege sufficient facts to support a finding that gender discrimination was the real reason the [USPS] fired her." (*Id.* at 7-8).

In opposition, Semple contends that "disparate treatment in regard to the Plaintiff as compared to male employees was demonstrated in the EEO record." (Pl. Opp. Br. at 13).  Semple avers that "male employees suffered no consequences while she was initially placed under a Last Chance Agreement and then terminated on account of delivery issues." (*Id.* at 14).  To rebut the USPS's contention that similarly situated employees would be those who also signed a Last Chance Agreement, Semple appears to argue that the relevant issue is that male employees were not subjected to some degree of discipline for similarly failing to deliver mail. (*See id.* at 13-14).

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of gender.  42 U.S.C. § 2000e-2(a).  Courts analyze such Title VII claims under the *McDonnell Douglas Corp. v. Green* framework. *See* 411 U.S. 792 (1973); *see also McCone v. Pitney Bowes, Inc.*, No. 14-11119, 2014 WL 4377868, at *2 (11th Cir. Sept. 5, 2014) (affirming Rule 12(b)(6) dismissal, explaining that "Title VII prohibits employment discrimination on the basis of gender"

and "[t]o establish a showing of discrimination based on circumstantial evidence, we apply the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)").

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination by showing the following: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Notably, regarding the fourth element, a plaintiff may "(1) introduce evidence of comparators (*i.e.*, similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene v. Virgin Islands Water & Power Authority*, 557 F. App'x 189, 195 (3d Cir. 2014); *see also Vernon v. A & L Motors*, 381 F. App'x 164, 167 (3d Cir. 2010) ("Vernon argues that a similarly situated individual outside of her protected class engaged in the same conduct as she did and was treated more favorably. The identification of such an individual may give rise to an inference of unlawful discrimination.").

Semple's Title VII claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Semple fails to allege facts from which the Court can reasonably infer that an adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination.  To be sure, the USPS concedes—at least for purposes of resolving its motion— that Semple is a member of a protected class and that she was qualified for her position as a letter carrier.  (*See* Def. Mov. Br. at 16).  And the USPS doesn't seem to take issue with there being an adverse employment action—*i.e.*, her termination of employment*. See also Griesbaum v. Aventis*

*Pharmaceuticals*, 259 F. App'x 459, 470 (3d Cir. 2007) ("[I]t is hard to understand how any employment action could be more adverse than a termination of the employment.").

But Semple's complaint is simply devoid of any factual allegations supporting the fourth element—*i.e.*, regarding similarly situated employees being treated more favorably under similar circumstances or any other causal nexus between her being a female and the alleged adverse employment action.  Her only allegations seemingly to this effect are that she was "deprived of . . . rights, privileges and immunities secured by Title VII of the Civil Rights Act of 1964 . . . on account of gender" and the Last Chance Agreement she was "coerced into agreeing to" imposed "standards" on Semple "that no other employee was expected to meet."  (Compl. ¶¶ 4, 15-17).

This, however, is insufficient.  The Court must accordingly dismiss her Title VII claim. *See Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home*, No. 13-2463, 2014 WL 2921534, at *3 (E.D. Pa. June 27, 2014) (dismissing Title VII claim because, "[w]ith regard to allegations that give rise to any inference of discrimination, [p]laintiff's [c]omplaint falls woefully short"); *Cassidy v. Pocono Med. Ctr.*, No. 12-1191, 2012 WL 5197943, at *4 (M.D. Pa. Oct. 19, 2012) (dismissing Title VII national origin discrimination claim where the plaintiff's "conclusory assertion" that "she was treated less favorably than employees who were not from the United Kingdom" was insufficient and ruling that "[i]f [p]laintiff chooses to satisfy the requirements of the fourth prong of her prima facie case through comparator evidence, her '[f]actual allegations must be enough to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

To be sure, Semple again apparently invites the Court to assess the USPS's Rule 12(b)(6) challenge against the administrative record, not her complaint.  (*See* Pl. Opp. Br. at 13-14).  For

the reasons set forth above with respect to Semple's Rehabilitation Act claim, however, the Court declines to do so.

### C.  Semple's Complaint Does Not Adequately Plead A Hostile Work Environment Claim

Finally, the USPS contends that it is unclear whether Semple intends to pursue a hostile work environment or harassment claim—but that, in any event, she failed to exhaust administrative remedies to this effect and, therefore, she is barred form asserting any such claim in federal court. (Def. Mov. Br. at 17-18).  The USPS argues that "Semple's EEO complaint was limited to disability discrimination" and subsequently she included "gender discrimination."  (*Id.* at 20-21). But the USPS asserts that Semple "did not move to add a harassment/hostile work environment claim during the administrative process."  (*Id.* at 21).  Moreover, the USPS argues that, even if Semple exhausted administrative remedies regarding a hostile work environment claim, her complaint "fails to allege sufficient factual bases" to support any such claim.  (*See id.* at 21-25).

In opposition, Semple argues that she "did in fact assert a hostile work environment claim in the administrative proceedings" and that "on an objective basis any work would find what the Plaintiff was subjected to as so severe or pervasive as to alter the conditions of her employment." (Pl. Opp. Br. at 14-16).  Semple avers that the "harassing actions" are "linked" to "discriminatory factors."  (*Id.* at 16).  Namely, she contends that the "demands about the shoes implicated the Plaintiff's foot impairments" and "Mr. Agostisi's failure to reply to the Plaintiff's accusation that everything being done to her was because she was a fat female or a disabled person also linked the harassment to impermissible factors."  (*Id.*).

To state a hostile work environment claim, "an employee must show that '(1) the employee suffered intentional discrimination because of [her protected class], (2) the discrimination was

pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same [protected class] in that position, and (5) the existence of *respondeat superior* liability.'" *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007) (quoting *Weston v. Penn.*, 251 F.3d 420, 426 (3d Cir. 2001)).

As an initial matter, Semple does not explicitly assert a separate cause of action for hostile work environment under Title VII. Nevertheless, Semple maintains that she adequately asserts a hostile work environment claim. (Pl. Opp. Br. at 14). Indeed, Semple alleges "a pattern of hostility," "attack[s]" on her "regarding the disabling condition of her feet," and coercion "into agreeing to a Last Chance Agreement." (*See* Compl. ¶¶ 11-15). And, in her opposition to the USPS's motion, Semple references factual matter cited in the administrative proceedings to support a hostile work environment claim. (*See* Pl. Opp. Br. at 14-15).

But the Court finds that Semple's complaint fails to state any such claim. As the USPS correctly argues, (*see* Def. Mov. Br. at 22, 24), Semple fails to allege facts supporting certain elements of a hostile work environment claim—namely, that she suffered intentional discrimination because she was either a female or disabled or, moreover, that any such discrimination was pervasive and regular. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotation marks and citations omitted); *Whitesell v. Dobson Communication*, 353 F. App'x 715, 717 (3d Cir. 2009) ("To determine whether the comments were severe or pervasive, we evaluate 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'") (quoting *Faragher*

*v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).   Simply put, Semple's allegations—as currently pled—are insufficient to support a hostile work environment claim.

And, since the Court dismisses Semple's complaint without prejudice, the Court declines to reach the failure-to-exhaust administrative remedies issue at this time.   After all, it seems appropriate to give Semple an opportunity to amend her complaint before comparing any hostile work environment claim to the administrative record.

## VI.   CONCLUSION

As set forth above, the Court hereby GRANTS the USPS's motion to dismiss.   Semple shall have 45 days to file an amended complaint.   An appropriate Order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**